FILED
LORAIN COUNTY

2022 APR - 1  P 12: 43

COURT OF COMMON PLEAS
THOMAS ORLANDO

IN THE COURT OF COMMON PLEAS
LORAIN COUNTY, OHIO

**22 CV 205623**

| | |
|---|---|
| TB FARMS WELLINGTON, LLC<br>40384 State Route 303<br>Lagrange, OH 44050 | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | )<br>) |
| COLUMBIA GAS<br>TRANSMISSION, LLC<br>C/O Corporation Service Company<br>50 West Broad Street,<br>Suite 1330<br>Columbus, OH 43215 | )<br>)<br>)<br>)<br>)<br>)<br>) |
| And | )<br>) |
| TC ENERGY MARKETING, INC. Inc.<br>C/O Corporation Service Company<br>50 West Broad Street,<br>Suite 1330<br>Columbus, OH 43215 | )<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>)<br>) |

CASE NO.

JUDGE

JUDGE MARK A. BETLESKI

**COMPLAINT:**

**Declaratory Judgment; Breach of Contract; Trespass**

**Jury Demand Endorsed Hereon**

Plaintiff, TB Farms Wellington, LLC, states as follows for its Complaint against Columbia Gas Transmission, LLC ("Columbia Gas") and TC Energy Marketing, Inc. ("TC Energy") (collectively referred to as "Defendants"):

1.      Plaintiff, TB Farms Wellington, LLC ("Plaintiff") is an Ohio limited liability company, and, pursuant to a deed dated May 18, 2020 and recorded with the Lorain County Recorder's Office on June 5, 2020, Plaintiff is the record title owner of certain real property located on Jones Road in Wellington, Ohio, Township of Penfield, Lorain County, being Permanent Parcel

1

No. 19-02-030-000-056, being approximately 36.5 acres (the "Plaintiff's Property"). A true and accurate copy of the deed transferring the Plaintiff's Property to Plaintiff is attached hereto as Exhibit A.

2.     Defendant, Columbia Gas Transmission, LLC ("Columbia") is a Delaware Corporation authorized to do business in the State of Ohio.

3.     TC Energy Marketing, Inc. ("TC Energy") is a foreign corporation authorized to do business in the State of Ohio.

4.     This court has jurisdiction over this matter as it involves a dispute as to real property located in Lorain County, Ohio.

5.     Venue is appropriate in this Court based upon Civ. R. 3(C).

<div align="center">

**BACKGROUND**

</div>

6.     Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 5 as if fully rewritten herein.

7.     On or about April 12, 1950, H.K. Andrews and Hazel J. Andrews, the former record title owners of the Property, granted a lease to the Ohio Fuel Gas Company for the oil and gas rights for approximately 122 acres of property, including the Property, which was recorded with the Lorain County Recorder's Office on June 30, 1950 (the "Lease"). A true and accurate copy of the Lease is attached hereto as Exhibit B.

8.     The Lease contains a primary term of twenty years, and a secondary term that would continue "so much longer thereafter as oil or gas is produced in paying quantity thereon. . . ."

9.     The Lease also contains a provision that entitles the Lessor to obtain free gas from any gas produced from the leased premises.

Exhibit A

10.     On or about April 12, 1950, H.K. Andrews and Hazel J. Andrews executed a supplemental agreement to the Lease, which was recorded with the Lorain County Recorder's Office on August 14, 1950 (the "Lease Amendment"). A true and accurate copy of the Lease Amendment is attached hereto as Exhibit C.

11.     The Lease Amendment provided that the lessee could also use the leased premises, including the Property, to store gas, and in exchange, among other things, extended the lessor's right to free gas to include gas stored or to be stored under the lease premises, including the Property.

12.     The Lease Amendment provides that lessor shall have the right to take gas from any well on the leased premises or any gas stored or to be stored under the property covered by the Lease and Lease Amendment. This privilege extends to gas stored or to be stored under the leased premises, including the Property, as well as to gas produced from wells on the leased premises, including the Property.

13.     Defendant Columbia Gas and/or Defendant TC Energy is/are the successors in interest to the original lessee under the Lease and the Lease Amendment.

14.     Pursuant to a deed dated November 6, 1980 and recorded with the Lorain County Recorder's Office on November 6, 1980, H. K. Andrews, acting through his attorney-in-fact, and Hazel J. Andrews (the original parties to the Lease and Lease Amendment) transferred the Property to Kay Lombard. A true and accurate copy of the deed reflecting this transfer of the Property is attached hereto as Exhibit D.

15.     Pursuant to a deed dated November 6, 1980 and recorded with the Lorain County Recorder's Office on November 6, 1980 Kay Lombard transferred the Property back to Hazel J.

3

Exhibit A

Andrews. A true and accurate copy of the deed reflecting this transfer of the Property is attached hereto as Exhibit E.

16.    Pursuant to a deed dated May 31, 1983 and recorded with the Lorain County Recorder's Office on June 10, 1983, Hazel J. Andrews transferred the Property to John Ormandy and Zelma Ormandy. A true and accurate copy of the deed reflecting this transfer of the Property is attached hereto as Exhibit F.

17.    Pursuant to a deed dated February 18, 2015 and recorded with the Lorain County Recorder's Office on February 18, 2015, John and Zelma Ormandy transferred the Property to T&B Farms, LLC, an Ohio limited liability company. A true and accurate copy of the deed reflecting this transfer of the Property is attached hereto as Exhibit G.

18.    Pursuant to a deed dated July 22, 2015 and recorded with the Lorain County Recorder's Office on July 24, 2015, T&B Farms, LLC transferred the Property to Ronald K. Novak and Melissa A. Novak. A true and accurate copy of the deed reflecting this transfer of the Property is attached hereto as Exhibit H.

19.    Pursuant to a deed dated May 18, 2020 and recorded with the Lorain County Recorder's Office on June 5, 2020, Ronald and Melissa Novak transferred the Property to T & B Farms Wellington, LLC, an Ohio limited liability company. A true and accurate copy of the deed reflecting this transfer of the Property is attached hereto as Exhibit A.

20.    Upon information and belief, Defendants no longer produce or store oil and gas at or under the leased premises or the Property because they refuse to provide free gas to Plaintiff despite Plaintiff's repeated demand for it.

4

Exhibit A

## COUNT I – DECLARATORY JUDGMENT

21.     Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 20 as if fully rewritten herein.

22.     Pursuant to R.C. 2721.02(A), "courts of record may declare rights, status, and other legal relations whether or not further relief is or could be claimed."

23.     Plaintiff is the owner of the Property and a lessor of the Lease and the Lease Amendment.

24.     Defendants or one of them, are/is the lessee of the Lease and the Lease Amendment.

25.     There is a real controversy between the parties to this dispute. The Lease and Lease Amendment provide that the Lease and Lease Amendment shall terminate when Defendants no longer produce and/or store oil and gas at the leased premises, including the Property. Defendants are no longer producing and/or storing oil and gas on the leased premises or Property, and Plaintiff seeks to terminate the terms of the Lease and the Lease Amendment or have it declared as terminated/expired.

26.     The parties' dispute is justiciable in character. Specifically, the Revised Code provides, "any person interest under a deed, will, written contract, or other writing constituting a contract […] may have determined any question of construction or validity arising under the instrument, constitutional provision, statute, rule, ordinance, resolution, contract, or franchise and obtain a declaration of rights, status, or other legal relations under it." R.C. 2721.03.

27.     Speedy relief is necessary to determine the rights and obligations of the parties. Defendants have ceased producing and/or storing oil and gas on the leased premises, including the Property, but encumbers Plaintiff's Property by virtue of the Lease and Lease Amendment. As

Exhibit A

such, a determination that the Lease and Lease Amendment are expired or terminated on their terms is necessary to clear title to Plaintiff's Property.

28.     In accordance with Rule 57 of the Ohio Rules of Civil Procedure and R.C. §2721.01 to §2721.15, Plaintiff seeks a declaratory judgment declaring that the Lease and Lease Amendment have terminated/expired pursuant to their terms.

<div align="center">

**COUNT II – DECLARATORY JUDGMENT**

</div>

29.     Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 28 as if fully rewritten herein.

30.     In the alternative to Count I, Plaintiff seeks a declaration of the parties' rights and obligations under the Lease and Lease Amendment should this Court determine that the Lease and Lease Amendment have not terminated.

31.     There is a real controversy between the parties to this dispute. The Lease and Lease Amendment provide that Plaintiff is entitled to free gas if gas is produced and/or stored at the leased premises or Property. Defendants have prevented Plaintiff from obtaining free gas, despite appearing to take the position that Lease and Lease Amendment have not terminated. Defendants must either be producing or storing gas under the leased premises to keep it from terminating, in which case they must provide Plaintiff with free gas, or Defendants are not producing or storing gas under the leased premises, in which case the Lease and Lease Amendment have terminated.

32.     The parties' dispute is justiciable in character. Specifically, the Revised Code provides, "any person interest under a deed, will, written contract, or other writing constituting a contract [...] may have determined any question of construction or validity arising under the instrument, constitutional provision, statute, rule, ordinance, resolution, contract, or franchise and obtain a declaration of rights, status, or other legal relations under it." R.C. 2721.03.

<div align="center">

6

</div>

<div align="right">

Exhibit A

</div>

33.     Speedy relief is necessary to determine the rights and obligations of the parties. Defendants have produced and/or stored oil and gas at the leased premises, including the Property but has prevented Plaintiff from obtaining free gas to which it is entitled under the terms of the Lease and Lease Amendment. As such, a determination of the parties' rights and obligations under the Lease and Lease Amendment are necessary.

34.     In accordance with Rule 57 of the Ohio Rules of Civil Procedure and R.C. §2721.01 to §2721.15, Plaintiff seeks a declaratory judgment declaring that it is entitled to free gas under the terms of the Lease and Lease Amendment.

### COUNT III – BREACH OF CONTRACT
### (Failure to Supply Oil and/or Gas)

35.     Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 34 as if fully rewritten herein.

36.     The Lease and Lease Amendment are contracts under which Defendants were granted oil and gas production and storage rights in exchange for, among other things, the promise to pay Plaintiff for those rights and in exchange for Plaintiff's right to free gas produced and/or stored on the leased premises.

37.     Plaintiff and its predecessors in interest have complied with all applicable provisions and obligations of the Lease and Lease Amendment; however, Defendants have failed to comply with their obligations under the terms of the Lease and Lease Amendment by failing and/or refusing to provide free gas to Plaintiff despite repeated demands to do so.

38.     By failing and/or refusing to provide Plaintiff with free gas produced and/or stored on the leased premises, Defendants have breached their obligations and promises made under the Lease and Lease Amendment.

7

Exhibit A

39. Plaintiff has been damaged by Defendants' breach because Plaintiff has been forced to obtain and will be forced in the future to obtain alternative heating and energy sources other than natural gas, and/or has had to replace certain appliances that are not convertible to non-natural gas energy sources.

40. As a proximate result of Defendants' breach of contract, Plaintiff has sustained damages for which Defendant is liable in excess of twenty-five thousand dollars ($25,000.00).

<div align="center">

**COUNT IV – BREACH OF CONTRACT**
**(Unauthorized Use of Property/Breach of Quiet Enjoyment)**

</div>

41. Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 40 as if fully rewritten herein.

42. The Lease and Lease Amendment are contracts under which Defendants were permitted to access certain portions of the leased premises, including the Property.

43. Plaintiff and its predecessors in interest have complied with all applicable provisions and obligations of the Lease and Lease Amendment by allowing Defendants access to the Property.

44. Defendants materially breached the terms of the Lease and Lease Amendment by exceeding the scope of the Lease and Lease Amendment by accessing and/or traversing over portions of the Property to which the Lease and Lease Amended did not grant access and/or by traversing over the Property in such a manner so as to cause damages to Plaintiff's Property or so as to unreasonably interfere with Plaintiff's right of quiet enjoyment.

45. As a direct and proximate result of Defendants' breach of contract, Plaintiff has sustained damages for which Defendants are liable in excess of twenty-five thousand dollars ($25,000.00).

Exhibit A

## COUNT V – Promissory Estoppel

46.     Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 45 as if fully rewritten herein.

47.     Defendants access the Property by using trucks and other heavy vehicles and equipment.

48.     Plaintiff proposed to Defendants that the parties split the cost of constructing a driveway on the Property. As part of this proposal, Defendants would be permitted use of the driveway to access the Property if Defendants split the cost of constructing the driveway.

49.     Defendants rejected Plaintiff's proposal and made an express and unambiguous promise that they would not use the driveway if Plaintiff installed it. As such, Defendants did not contribute financially to the construction of the driveway.

50.     Plaintiff constructed the driveway at its sole cost and expense in reliance upon Defendants' express and unambiguous promise that it would not use the driveway.

51.     Defendants have used Plaintiff's driveway in direct contravention of their promises not to do so.

52.     Defendants' use of the driveway has damaged the driveway and surrounding grounds, causing damages to the Plaintiff.

53.     Plaintiff has been damaged in relying on Defendants' promise to not use the driveway as Plaintiff constructed the driveway at its sole expense, and Defendants' access to the driveway has caused damages that they have failed and/or refused to repair.

## COUNT VI – TRESPASS

54.     Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 53 as if fully rewritten herein.

Exhibit A

55. The Lease and Lease Amendment have terminated by their terms because Defendants have ceased producing and/or storing oil and gas on the leased premises, including the Property.

56. Despite the termination of the Lease and Lease Amendment, Defendants continue to intentionally access the Property without privilege or authority to do so.

57. Defendants have also trespassed by entering onto certain portions of Plaintiff's Property without authorization, including, but not limited to, Plaintiff's driveway, and as a result have caused damages to Plaintiff's Property which Defendants have failed and/or refused to repair.

58. As a result of Defendants' continuous wrongful invasion of the Property, Plaintiff has suffered and continues to suffer damages in excess of $25,000, plus punitive damages, plus attorney fees and prejudgment and postjudgment interest.

**WHEREFORE**, Plaintiff prays for judgment against Defendants as follows:

A. A Declaration that the Lease and Lease Amendment have terminated by their terms;

B. A Declaration that Plaintiff is entitled to free gas from any gas that is being produced and/or that is stored or is to be stored upon the leased premises, including the Property;

C. Damages in an amount exceeding $25,000 for Defendants' breach of the Lease and Lease Amendment, which forced Plaintiff to purchase other heating and energy sources and/or to replace certain appliances that could not be converted to alternative energy sources;

D. Damages in an amount exceeding $25,000 for Defendants' breach of Lease and Amendment for unauthorized use of Property;

Exhibit A

      E.      Damages in an amount exceeding $25,000 for Plaintiff's detrimental reliance upon Defendants' promises that it would not use Plaintiff's driveway if Plaintiff constructed it;

      F.      Damages for Defendants' trespass in an amount exceeding $25,000, plus punitive damages, together with attorney fees; and

      G.      Prejudgment and post-judgment interest;

      H.      Costs; and

      I.      Any further relief, equitable or otherwise which this court may deem fair and just including attorney fees, court costs, pre and post judgment interest and costs of this action.

      Respectfully submitted,

      */s/ Lucas K. Palmer*
      Lucas K. Palmer (0080838)
      BRENNAN MANNA & DIAMOND, LLC
      250 S. Civic Center Drive, Suite 300
      Columbus, Ohio 43215
      P: (614) 246.7500
      F: (614) 246.7515
      E:    lkpalmer@bmdllc.com

      Hilary F. DeSaussure (0098989)
      BRENNAN MANNA & DIAMOND, LLC
      75 East Market Street
      Akron, OH 44308
      P: (330) 253-5060
      F: (330) 436-8911
      E:    hfdesaussure@bmdllc.com

      Counsel for Plaintiffs

Exhibit A

## JURY DEMAND

Plaintiffs request a trial by jury on all issues so triable in this action.

/s/ Lucas K. Palmer
_____

Lucas K. Palmer (0080838)
Hilary F. DeSaussure (0098989)
Counsel for Plaintiffs

12

Exhibit A

## INSTRUCTIONS TO CLERK

Please issue service of the Summons and Complaint by certified mail, return receipt requested upon Defendants at the addresses in the caption.

*/s/ Lucas K. Palmer*

Lucas K. Palmer (0080838)
Hilary F. DeSaussure (0098989)
Counsel for Plaintiffs

4870-4811-3434, v. 1

13

**Exhibit A**

Doc ID: 022313050007 Type: OFF
Kind: DEEDS
Recorded: 06/05/2020 at 11:22:24 AM
Fee Amt: $74.00 Page 1 of 7
Lorain County, Ohio
Judith M Nedwick County Recorder
File 2020-0763364

**TRANSFERRED**

IN COMPLIANCE WITH SEC. 319-202
OHIO REV. CODE

JUN 0 5 2020

**J. CRAIG SNODGRASS, CPA, CGFM**
LORAIN COUNTY AUDITOR

# Quit-Claim Deed

Know all Men by these Presents, that Ronald K. Novak and Melissa A. Novak, husband and wife, the Grantors, for the consideration of Ten Dollars ($10.00) received to his full satisfaction of T & B Farms Wellington, LLC, an Ohio limited liability company, the Grantee, whose tax mailing address is 40384 State Route 303, LaGrange, OH 44050, has given, granted, remised, released and forever quit-claimed, and does by these presents absolutely give, grant, remise, release and forever quit-claim unto the said Grantee, its successors and assigns forever, the following described real property:

See Attached Exhibit A

To have and to hold premises aforesaid, with the appurtenances thereunto belonging, to the said Grantee, its successors and assigns, so that neither the said Grantors, nor their heirs, nor any other persons claiming title through or under them, shall or will hereafter claim or demand any right or title to the premises, or any part thereof, but they and every one of them shall by these presents be excluded and forever barred.

And for valuable consideration, each of the Grantors, hereby remise, release and forever quit claim unto the said Grantee, its successors and assigns, any and all of their right and expectancy of dower in the above-described premises.

Executed this ___ day of __May__, 2020.

_____
Ronald K. Novak

_____
Melissa A. Novak

**EXHIBIT**
**A**

Exhibit A

**State of Ohio**
**County of Lorain: ss.**

This is an acknowledgment clause.  No oath or affirmation was administered to the signers.

Before me, a Notary Public, in and for said County and state, personally appeared the above named Ronald K. Novak and Melissa A. Novak, who acknowledged that they signed the foregoing instrument and that the same is their free act and deed.

**In Testimony Whereof,**  I have hereunto set my hand and official seal, at Lorain, Ohio, this _18th_ day of ____May____, 2020.

Notary Public

*This Instrument Prepared by:*
*Timothy S. Trigilio, Esq.*
*5750 Cooper Foster Park Road, Suite 102*
*Lorain, Ohio 44053-4132*
*(440) 988-9500*

TIMOTHY S. TRIGILIO
Attorney At Law
Notary Public, State of Ohio
My Commission Does Not Expire
O.R.C. 147.03

2

Exhibit A

**Exhibit A**

**Parcel No. 1**

Situated in the Township of Penfield, County of Lorain and State of Ohio and being part of Original Penfield Township Lot No. 30, Tract No. 2, bounded and described as follows: Beginning at a point in the centerline of Jones Road at the Southwesterly corner of land conveyed to Richard Behnke and Carol Behnke by deed dated August 22, 1979 and recorded in Deed Volume 1242, Page 591 of Lorain County Record of Deeds; thence in the centerline of Jones Road, South 89° 30' 30" West, a distance of 250.00 feet to a point; thence North 0° 05' 30" West, passing through an iron pin set 30.00 feet Northerly from said centerline, a distance of 1262.48 feet to an iron pin set in the Northerly line of Original Lot No. 30; thence in said line, North 89° 51' 24" East a distance of 250.00 feet to an iron pn found at the Northwesterly corner of land conveyed to Behnke's as aforesaid; thence in the Westerly line of said Behnke's lands, South 0° 05' 30" East a distance of 1260.96 feet to a point in the centerline of Jones Road, passing through an iron pin found 30.00 feet Northerly therefrom and the Place of Beginning of lands herein described. Containing within said bounds 7.2412 acres of land. Surveyed by Laundon, Simon, Cahl & Assoc., Inc. in May 1983.

Permanent Parcel No.: 19-02-030-000-042
Prior Instrument No. 2015-0534590



3

Exhibit A

EXHIBIT A
LEGAL DESCRIPTION
PARCEL 2

Situated in the Township of Penfield, County of Lorain and State of Ohio, also known as being part of Section/Tract Nos. 2 and 3, Lot Nos. 30 thru 32 and being part of lands conveyed to John Ormandy Jr. and Zelma Ormandy as recorded in Volume 1321, Page 554 and by deed dated November 04, 1977 as recorded in Volume 1191, Page 392 of Lorain County Records further bounded and described as follows:
*31,

Commencing at a 5/8-inch iron pin in a monument box found and used at the intersection of the centerline Sooy Road and the centerline of Jones Road;

Thence along the centerline of Jones Road, bearing North 87°34'56" East, a distance of 1154.07 feet to an angle point therein;

Thence continuing along the centerline of Jones Road, bearing North 87°04'50" East, a distance of 529.57 to a point thereon, also being the Southeast corner of lands conveyed to John L. and Lora L. Hostal by deed dated July 15, 2003 as recorded in Instrument No. 2003-0930727 of Lorain County Records and the TRUE PLACE OF BEGINNING of the parcel herein described;

Thence along the Eastern line of said lands of Hostal, bearing North 03°56'36" West, passing through an iron pin set at 30.00 feet, a total distance of 354.89 feet to an iron pin set;

Thence along the Northern line of said lands of Hostal and parallel to a portion of the centerline of Jones Road, bearing South 87°04'50" West, a distance of 699.41 feet to an iron pin set at the Northwest corner of said lands of Hostal, also being a point on the Eastern line of lands conveyed to Douglas F. Johnson by deed dated February 16, 1983 as recorded in Volume 1914, Page 669 of Lorain County Records;

Thence along the Eastern line of said lands of Johnson (1983), bearing North 02°27'21" West, a distance of 46.68 feet to a ¾-inch pipe found and used at the Northeast corner of said lands of Johnson;

Thence along the Northern line of said lands of Johnson (1983) and parallel to a portion of the centerline of Jones Road, bearing South 87°34'56" West, a distance of 400.40 feet to a ¾-inch pipe found and used at the Northwest corner of said lands of Johnson (1983), also being a point on the Eastern line of lands conveyed to Douglas F. & Patricia J. Johnson by deed dated December 07, 1999 as recorded in Instrument No. 1999-0657488 of Lorain County Records;

Thence along the Eastern line of said lands of Johnson (1999), bearing North 02°27'01" West, a distance of 867.09 feet to a ¾-inch pipe found and used at the Northeast corner of said lands of Johnson (1999), also being a point on the Northern line of aforesaid Section/Tract No. 2, Lot No. 30, also being the Southern line of aforesaid Section/Tract No. 3, Lot No. 31;

Thence along the Northern line of said lands of Johnson (1999) and along the Southern line of aforesaid Section/Tract No. 3, Lot No. 31, bearing South 87°26'18" West, passing through an iron pin set at 234.13 feet, a total distance of 284.13 feet to a point on the Northern line of said lands of Johnson (1999) and the Southern line of aforesaid Section/Tract No. 3, Lot No. 31, also being the Southeast corner of lands conveyed to Jay M. Murray, Jr. by deed dated September 30, 2003 as recorded in Instrument No. 2003-0953913 of Lorain County Records, also being a point in the centerline of the East Branch Black River;

Thence along centerline of the East Branch Black River, along a non-tangent curve to the left having a radius of 259.93 feet, the long chord of which bears North 08°34'06" West for a distance of 156.13 feet for an arc length of 158.58 feet to a point in the centerline of the East Branch Black River;



Legal desc.
on 5/2/2020

Exhibit A

Thence continuing along centerline of the East Branch Black River and along a compound curve to the left with a radius of 100.00 feet, a tangent length of 29.56 feet, the chord of which bears North 42°30'50" West for a distance of 56.69 feet, along said arc for a distance of 57.48 feet to a point in the centerline of the East Branch Black River;

Thence continuing along centerline of the East Branch Black River and along a reverse curve to the right with a radius of 92.58 feet, a tangent length of 92.10 feet, the chord of which bears North 14°07'48" West for a distance of 130.59 feet, along said arc for a distance of 144.94 feet to a point in the centerline of the East Branch Black River;

Thence continuing along centerline of the East Branch Black River, bearing North 30°43'17" East, a distance of 50.04 feet to a point in the centerline of the East Branch Black River;

Thence continuing along centerline of the East Branch Black River and along a tangent curve to the right with a radius of 112.65 feet, a tangent length of 139.82 feet, the chord of which bears North 21°51'48" East for a distance of 175.44 feet, along said arc for a distance of 201.10 feet to a point in the centerline of the East Branch Black River;

Thence continuing along centerline of the East Branch Black River and along a reverse curve to the left with a radius of 96.00 feet, a tangent length of 94.32 feet, the chord of which bears North 88°30'35" East for a distance of 134.56 feet, along said arc for a distance of 149.11 feet to a point in the centerline of the East Branch Black River;

Thence continuing along centerline of the East Branch Black River and along a compound curve to the left with a radius of 258.51 feet, a tangent length of 57.69 feet, the chord of which bears North 31°26'02" East for a distance of 112.61 feet, along said arc for a distance of 113.52 feet to a point in the centerline of the East Branch Black River;

Thence continuing along centerline of the East Branch Black River, bearing North 18°51'14" East, a distance of 144.70 feet to a point in the centerline of the East Branch Black River;

Thence continuing along centerline of the East Branch Black River and along a tangent curve to the left with a radius of 858.63 feet, a tangent length of 214.99 feet, the chord of which bears North 04°47'47" East for a distance of 417.11 feet, along said arc for a distance of 421.32 feet to a point in the centerline of the East Branch Black River;

Thence continuing along centerline of the East Branch Black River and along a compound curve to the left with a radius of 50.00 feet, a tangent length of 14.70 feet, the chord of which bears North 25°38'20" West for a distance of 28.20 feet, along said arc for a distance of 28.59 feet to a point in the centerline of the East Branch Black River;

Thence continuing along centerline of the East Branch Black River and along a reverse curve to the right with a radius of 55.00 feet, a tangent length of 79.86 feet, the chord of which bears North 13°25'45" East for a distance of 90.60 feet, along said arc for a distance of 106.45 feet to a point in the centerline of the East Branch Black River;

Thence continuing along centerline of the East Branch Black River and along a compound curve to the right with a radius of 847.55 feet, a tangent length of 30.99 feet, the chord of which bears North 70°58'09" East for a distance of 61.94 feet, along said arc for a distance of 61.95 feet to a point in the centerline of the East Branch Black River;



Exhibit A

Thence continuing along centerline of the East Branch Black River and along a compound curve to the right with a radius of 50.00 feet, a tangent length of 8.57 feet, the chord of which bears North 82°47'11" East for a distance of 16.89 feet, along said arc for a distance of 16.97 feet to a point in the centerline of the East Branch Black River;

Thence continuing along centerline of the East Branch Black River and along a compound curve to the right with a radius of 2544.38 feet, a tangent length of 79.17 feet, the chord of which bears South 85°42'30" East for a distance of 158.26 feet, along said arc for a distance of 158.29 feet to a point in the centerline of the East Branch Black River;

Thence continuing along centerline of the East Branch Black River and along a compound curve to the right with a radius of 150.00 feet, a tangent length of 18.67 feet, the chord of which bears South 76°49'49" East for a distance of 37.06 feet, along said arc for a distance of 37.15 feet to a point in the centerline of the East Branch Black River;

Thence continuing along centerline of the East Branch Black River and along a compound curve to the right with a radius of 1259.31 feet, a tangent length of 69.92 feet, the chord of which bears South 66°33'23" East for a distance of 139.62 feet, along said arc for a distance of 139.69 feet to a point in the centerline of the East Branch Black River;

Thence continuing along centerline of the East Branch Black River and along a reverse curve to the left with a radius of 20.00 feet, a tangent length of 12.12 feet, the chord of which bears North 85°23'55" East for a distance of 20.73 feet, along said arc for a distance of 21.80 feet to a point;

Thence continuing along centerline of the East Branch Black River and along a compound curve to the left with a radius of 200.70 feet, a tangent length of 44.27 feet, the chord of which bears North 41°44'17" East for a distance of 86.45 feet, along said arc for a distance of 87.14 feet to a point in the centerline of the East Branch Black River;

Thence continuing along centerline of the East Branch Black River and along a compound curve to the left with a radius of 15.00 feet, a tangent length of 6.03 feet, the chord of which bears North 06°24'46" East for a distance of 11.67 feet, along said arc for a distance of 11.98 feet to a point in the centerline of the East Branch Black River;

Thence continuing along centerline of the East Branch Black River and along a reverse curve to the right with a radius of 130.00 feet, a tangent length of 39.63 feet, the chord of which bears North 00°28'40" East for a distance of 76.81 feet, along said arc for a distance of 76.93 feet to a point in the centerline of the East Branch Black River, also being the Southwest corner of lands conveyed to Russell J. and Vicki-Lynn Dudzinski by deed dated August 20, 2003 as recorded in Instrument No. 2003-0942774 of Lorain County Records;

Thence along the Southern line of said lands of Dudzinski, bearing North 87°37'32" East, passing through an iron pin set at 50.00 feet, a total distance of 1884.33 feet to an iron pin set at the Southeast corner of said lands of Dudzinski;

Thence along the Eastern line of said lands of Dudzinski, also being parallel to the Eastern line of Section/Tract No. 3, Lot No. 33, bearing North 02°27'18" West, a distance of 1765.51 feet to an iron pin set on the Eastern line of said lands of Dudzinski, also being a point on the Northern line of aforesaid Section/Tract No. 3, Lot No. 32 and the Southern Line of said Section/Tract No. 3, Lot No. 33;

Thence along the Northern line of aforesaid Section/Tract No. 3, Lot No. 32 and the Southern Line of said Section/Tract No. 3, Lot No. 33, bearing North 87°24'30" East, a distance of 768.41 feet to an iron pin set on the Northern line of said Section/Tract No. 3, Lot No. 32, also being a point on the Western line of lands



Exhibit A

conveyed to Leona Park by deed dated April 05, 1989 as recorded in Official Record Volume 165, Page 359 of Lorain County Records;

Thence along the Western line of said lands of Park, also being parallel to the Eastern line of aforesaid Section/Tract No. 3, Lot No. 33, bearing South 02°27'18" East, a distance of 329.95 feet to an iron pin set at the Southwest corner of said lands of Park;

Thence along the Southern line of said lands of Park, bearing North 87°24'30" East, a distance of 330.27 feet to 1-inch iron pipe found and used on the Eastern line of aforesaid Section/Tract No. 3, Lot No. 32, also being a point on the Western line of lands conveyed to Mike & Heidi Eady by deed dated June 04, 1999 as recorded in Instrument No. 1999-0619903 of Lorain County Records;

Thence along the Eastern line of aforesaid Section/Tract No. 3, Lot No. 32, bearing South 02°51'02" East, a distance of 2656.15 feet to the Southeast corner of aforesaid Section/Tract No. 3, Lot No. 31, also being the Northeast corner of lands conveyed to Agnes M. Smith by deed dated January 09, 2012 as recorded in Instrument No. 2012-0398000 of Lorain County Records, as witnessed by a 1-inch iron pipe found 0.14 feet South;

Thence along the Southern line of said Section/Tract No. 3, Lot No. 31, bearing South 87°44'53" West, a distance of 1809.23 feet to a 1-inch iron pipe found and used at an angle point in the Southern line of said Section/Tract No. 3, Lot No. 31, also being the Northeast corner of lands conveyed to Donald A. Piwinski II by deed dated May 26, 2006 as recorded in Instrument No. 2006-0145031 of Lorain County Records;

Thence continuing along the Southern line of said Section/Tract No. 3, Lot No. 31, also along the Northern line of said lands of Piwinski, bearing South 87°26'13" West, a distance of 249.99 feet to an iron pin set on the Southern line of said Section/Tract No. 3, Lot No. 31 at the Northwest corner of said lands of Piwinski;

Thence along the Western line of said lands of Piwinski, bearing South 02°33'44" East, a distance of 1262.25 feet to the Southwest corner of said lands of Piwinski, also being a point on the centerline of Jones Road;

Thence along the centerline of Jones Road, bearing South 87°04'50" West, a distance of 471.44 feet to a point on the centerline of Jones Road, also being the Southeast corner of aforesaid lands of Hostal and the TRUE PLACE OF BEGINNING, containing 179.8726 acres of land, being 35.2392 acres of land in aforesaid Lot No. 32, 108.1343 acres of land in aforesaid Lot No. 31 and 36.4991 acres of land in aforesaid Lot No. 30, more or less but subject to all legal highways and all covenants and agreements of record.

Bearings are based on an assumed meridian and are used herein to indicate angles only.

The centerline of the East Branch Black River is described as observed on April 27, 2012.

Parcel boundary lines along the East Branch Black River and overall parcel acreage are subject to change due to the natural movement of the waterway through time.

The statement iron pin set refers to a 5/8" X 30" iron rebar set vertically with surveyor's I.D. cap marked "Rolling~Hocevar".

This legal description was prepared based on a survey under the supervision of Douglas S. Jewel, P.S. No. S-8007 by Rolling & Hocevar, Inc. in June 2012. *PP# 19-03-031-000-004; 19-03-032-000-002; 19-02-030-000-056:*

*Prior Instrument: 2015-0553237*

TRIGILIO STEPHENSON AND
DATTILO PLL
5750 COOPER FOSTER PARK RD
SUITE 102
LORAIN, OH 44053-4132

Exhibit A

Page 1 of 2

VOL **59** PAGE **226**          407447          147534

FORM C-11-S REV. 10 X 40 CBD

THIS LEASE, Made and entered into this _12th_ day of _April_ A.D. 19 50
by and between __H. K. ANDREWS__ and __HAZEL J. ANDREWS, husband and wife__
__The Wellington Savings and Loan Company, Mortgagee__
_____ hereinafter called the Lessor and

THE OHIO FUEL GAS COMPANY, an Ohio corporation, called the Lessee.

WITNESSETH: That Lessor, in consideration of the sum of one dollar, the receipt of which is hereby acknowledged, and of the covenants and agreements hereinafter contained, does hereby grant unto the Lessee all the oil and gas in and under the lands herein after described, together with the exclusive right to drill for, produce and market oil and gas and also the right to enter thereon at all times for the purpose of drilling and operating for oil, gas and water and to protect, use and occupy so much of said premises as is necessary and convenient in removing the above named products therefrom by pipe lines or otherwise, for a term of twenty (20) years and so much longer thereafter as oil or gas is produced in paying quantity thereon, all of that certain tract of land situate in

Section No. _2, Lot 30_ _____ Township of _Penfield_
County of _Lorain_ _____ and State of Ohio, bounded substantially as follows:

On the North by the lands of _North Line of Section 2, Lot 30_
On the East by the lands of _Lora A. Davidson_
On the South by the lands of _Buel D. Wilson and Jones Road_
On the West by the lands of _Buel D. Wilson, East Branch Black River_
containing _One Hundred Twenty-two_ _____ _122_ acres, more or less.

If, at the termination of said term, either primary or extended, there is a well in process of being drilled on said lands, then this lease shall continue in force so long as the drilling of such well is continued with reasonable diligence and so much longer there after as oil or gas is found on said premises in paying quantity, in the judgment of the Lessee. No well shall be drilled within _300_ feet of the barn or dwelling on said premises without the consent of Lessor.

In consideration of the premises the said parties covenant and agree as follows:
Lessee shall deliver to the Lessor, in tanks or pipe lines one-eighth (⅛) part of the oil produced and saved from the premises and shall pay for the product of each gas well from the time and while gas is marketed, an annual rental of __Two Hundred and no/00__ — — — — — — — — Dollars ($ _200.00_ ) payable quarterly, per year for the use of said casinghead gas.

Should casinghead gas be marketed from any oil well however, the annual rental shall be twenty-five dollars ($25.00)

Lessee shall drill a well producing oil or gas in paying quantity on said premises within __three months__
from this date or pay to Lessor __Thirty and 50/100__ — — — — — Dollars ( _$30.50_ ) each __three months__ thereafter until such well is drilled or this lease surrendered. If a gas well be completed before the end of the term for which rental has been paid for gas, the unearned portion of said rental shall be a credit on the gas well rental. When the last well producing under this lease is abandoned, the Lessee, if it elects to hold this lease, shall resume the payment of the land rentals provided for herein and thereupon the same drill or pay well, or gas in paying quantity shall be drilled or this lease surrendered.

Lessee shall bury, when so requested by Lessor all pipe lines used to conduct gas or oil off the premises and shall pay all damage to growing crops caused by operations under this lease.

Lessor may lay a line to any gas well on said lands and take gas produced from said well for use for light and heat in one dwelling house on said land, at Lessor's own risk, subject to the use and the right of abandonment of the well by Lessee. The first one hundred thousand cubic feet of gas taken may year shall be free of cost, but all gas in excess of one hundred thousand cubic feet taken each year shall be paid for at the rate now in effect in the current established schedule of rates filed with the Public Utilities Commission of Ohio applicable in the immediate vicinity of the point at which gas is to be delivered to Lessor. If no established schedule of rates is applicable to the vicinity then the rate prevailing in the nearest municipality served by The Ohio Fuel Gas Company shall apply. Lessor agrees to pay for all gas so delivered within ten (10) days after the bill for the monthly reading period has been issued, and any non-payment that becomes delinquent may be deducted from subsequent payments due Lessor under this lease. Measurement and regulation shall be by meter and regulators set at the tap at the well. This privilege is upon condition that Lessor shall subscribe to and be bound by the reasonable rules and regulations of the Lessee relating to the use of free gas.

Acreage rentals, royalties on any well, or wells paid on to be paid, as herein provided, are and will be accepted by Lessor as adequate and full consideration to render, it optional with Lessee as to whether or not it shall drill a well or wells to offset pro ducing wells on adjoining lands on premises. Should it be determined that Lessor owns only a fraction of the fee-simple in the oil and gas in the above described lands, then Lessor shall receive such fraction only of the rentals and royalties above specified. This lease shall extend to and bind any interest or estate in the oil and gas in the above described lands hereafter acquired by Lessor.

Payment of all moneys due on this lease may be made, by cash or check, to __H. K. Andrews__
xxxxxx xxxxxxxxxx
__him__ at _R.F.D. 2, Wellington_ Ohio. xxxxxxx by check made payable to __his__ order and mailed

Lessee is to have the privilege of using sufficient oil, gas, or water, for operating the premises and the right at any time during the term of this lease or within a reasonable time after its surrender or expiration to remove any machinery or furtures placed on said premises and further, upon the payment on the Lessor of one dollar and all amounts due hereunder, Lessee shall have the right to surrender this lease or any portion thereof, by quit-claiming to Lessor the whole or any part of the leasehold in the county where the lease is recorded, the quit-claim on the indorsement of surrender, either of which shall be a valid and complete surrender of this lease as to all of the said premises or such portion thereof at the surrender shall indicate and a cancellation of all liabilities under same of each and all parties hereto to the extent indicated in the quit-claim or surrender, and the acreage rental shall be reduced in proportion to the acreage surrendered. No change in the ownership of the land or assignment of rentals or royalties shall be binding on the Lessee until after the Lessee has been furnished with a written transfer or assignment or a certified copy thereof.

All covenants and conditions between the parties hereto shall extend to their heirs, executors, successors and assigns and the Lessee hereby warrants and agrees to defend the title to the lands herein described. Lessor shall have the right at any time to redeem for Lessor, or otherwise acquire by payment, any mortgages or any other liens upon the above described lands which in any manner affect the Lessee's interest therein in the event of default of payment by Lessor and be subrogated in full to all the rights of the holder thereof, the same as if Lessee were the original owner of said mortgage or lien. Lessee shall also have the right to reimburse itself by applying to the discharge of said mortgage or other lien; or payments made by it, the rentals and royalties accruing hereunder.

IN WITNESS WHEREOF, the parties hereto have hereunto set their hands.
Signed and Acknowledged in the Presence of:

_Carl E. Adams_                         _H. K. Andrews_
_Edward G. Bushman_                     _Hazel J. Andrews_

EXHIBIT
**B**

_Carl E. Harris_                        THE WELLINGTON SAVINGS & LOAN CO.
_W. West_                               BY _____
                                        Attest

EXHIBIT A

For Supplemental Agreement see Lease Vol. 59 #407447 28 - 31/4
For Assignment see Release Vol 52 #224404
See Int. Vol 1084 /2 #22774 #200364

the producing gas well on said premises, drilled under date of 9/22/1944, and identified in Lessee's record as Well No. 1-7729, together with the production thereof, all pipe and material therein and operating equipment around and about the said well, is the property of Lessee, its successors and assigns, and shall be maintained, operated, utilized and finally abandoned the same as if it had been drilled under the terms of, while said well is being utilized and operated, no acreage rental is being maintained.

VOL **59** PAGE **227**

THE STATE OF OHIO
COUNTY OF **LORAIN** } ss.

Personally appeared before me, a _____ Notary Public _____ in and for said County,

**E. K. Andrews and Hazel J. Andrews, husband and wife** _____ who
acknowledged the signing of the foregoing instrument to be _____ **their** _____ voluntary act and deed for the uses and
purposes therein mentioned.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my **official** seal this **14th** day of
**April** _____ A. D. 19 **50**

*T. M. West*
*Notary Public*

THE STATE OF OHIO
COUNTY OF **LORAIN** } ss.

Personally appeared before me, a _____ Notary Public _____ and for said County,

The **Wellington Savings & Loan Company,** by _____ **W.H.** _____, its
**Secretary** and by _____ its _____ who's
being duly authorized in the premises, _____ voluntary act and deed for the uses and
acknowledged the signing of the foregoing instrument to be _____ on behalf of The Wellington Savings & Loan Co.
purposes therein mentioned,

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my **official** seal this **14th** day of
**April** _____ A. D. 19 **50**

*T. M. West*
*Notary Public*

**Oil and Gas Lease**

FROM

**H. K. ANDREWS & HAZEL J. ANDREWS**
husband and wife

TO

**THE OHIO FUEL GAS CO.**

Date _____ Oct 12 _____ 19 50
Term _____ 20 _____ years
No. Acres 162
Township **Penfield**
County **Lorain**
Received **JUN 21 1950**
Received **JUN 30 1950** o'clock __ P.M.
Record of Leases Page 226
Recorder's Fees $1.30
LORAIN COUNTY RECORDER
Replaces No. 130736

A. LEASE No. _____

**RELEASE**

THE OHIO FUEL GAS CO., Lessee, having paid to the Lessor _____
one dollar and all amounts due hereunder, and having elected to surrender the within lease and all its rights hereunder, does
hereby surrender and cancel the same and hereby endorses its surrender hereon.

IN WITNESS WHEREOF, it has hereunto set its hand, this _____ day of _____ A. D. 19 _____

WITNESS: _____                    THE OHIO FUEL GAS COMPANY,

By _____                    Vice-President.

Exhibit A

FORM 1-A GEO.

409428

Lease No.

VOL **59** PAGE **314** SUPPLEMENTAL AGREEMENT

Entered into this _12th_ day of _April_ A. D. 19_50_

between **H. K. Andrews** and Hazel J. Andrews, husband and wife

**The Wellington Savings & Loan Company, Mortgagee**

lessor_s_, and THE OHIO FUEL GAS COMPANY, an Ohio corporation, lessee.

Lessor_s are_ the present owner_s_ of the premises described in a certain oil and gas

lease executed by **Lessors**

**Lessee**

dated _April 12, 1950_ recorded in Volume _59_ Page _226_ of the **Lease**

records of **Lorain** County, Ohio, comprising **One Hundred Twenty-two**

**122** acres, more or less, situated in Lot _XX_ Section _30_

Township of **Penfield** County of **Lorain** and State of Ohio, lessee

is the present owner of the lessee's interest (excepting oil rights) under said lease which is hereinafter referred to as the "original lessee".

Lease is now operating on said premises, its gas well No. **1-7779**

In consideration of one dollar paid by lessee to lessor_s_, the receipt of which is hereby acknowledged and of the mutual promises hereinafter contained, lessor_s_ and lessee agree that said lease may be and is hereby modified, enlarged and extended as follows:

1. Lessee shall pay to lessor, as full rental and compensation for the uses of said lands authorized and said lease as herein modified and enlarged, and the product and so authorized uses of well No. **1-7779** **Two hundred and**

**no/100 - - - - - - - - - - - -** Dollars ($ **200.00** ) per annum, payable **quarterly**,

beginning as of **June 12, 1950**

and for any well or wells hereafter drilled and utilized, a sum equal to **Two Hundred and no/100 - - -**

Dollars ($ **200.00** ) per annum payable **quarterly** beginning as of the date of utilization and continuing, as to each such well, so long as such well is used as herein authorized or until the lessee shall have surrendered said lease and this supplemental agreement. Said payments shall be in lieu of well rentals provided by said original lease and any modifications thereof. Payment of all moneys due on the original lease and all agreements supplemental thereto may be made by cash or check to **H. K. Andrews** XXXXXXXXXXXXXXXXXXXXXX

XX XXXXX XXXXXXXX any check made

payable to **his** order and mailed to **him** R.F.D. 2, Wellington Ohio.

2. Lessee shall have the additional right from time to time to inject gas of any kind for storage in and under said lands, to use for such purpose any well or wells now operated thereon, to drill as it may elect, other wells thereon for such purpose, to remove such gas, together with the natural product of such well or wells therefrom, by such means as lessee may choose, and to install and maintain on said lands such additional equipment and to do such other things as may be reasonably necessary and convenient for such purposes.

3. The privilege of the lessor to take gas from any well on said lands for use on said premises, as and to the extent specified in said original lease, and any modification thereof, shall extend to gas stored or to be stored under said lands as well as to gas produced from such wells.

4. The lease shall have and hold the rights and interests in said lands, created by said lease and all modifications thereof, including this instrument, for the term of twenty years, commencing on the date of this instrument, and so much longer thereafter as gas is produced, stored in and under said lands or marketed from a well or wells on said land, all subject to lessee's right to surrender the said lease as herein modified, in manner aforementioned.

5. Except as herein specifically modified, enlarged and extended, all the terms and provisions of said original lease and any uncanceled modification thereof shall continue in full force and effect between the parties hereto, and all such terms and provisions and all covenants therein contained, are hereby made applicable to said lease as hereby modified, enlarged and extended and shall inure to the benefit of the parties hereto, and all of the rights, privileges, covenants and obligations of the parties hereunder shall extend to and be binding upon their respective heirs, executors, successors and assigns.

IN WITNESS WHEREOF, the parties hereto have hereunto set their hands.

Witnesses

_Carl E. Shim_ _H.K. Andrews_

_Edward D. Bughman_ _Hazel J. Andrews_

**THE WELLINGTON SAVINGS & LOAN CO.**

_Carl E. Harry_ By _W.H. _____ Sr._

_M.M. West_ Attest

**THE OHIO FUEL GAS COMPANY**

By _____

Asst. Manager-Production Div.

EXHIBIT
C

Exhibit A

Page 2 of 2

VOL **59** PAGE **315**

THE STATE OF OHIO
COUNTY OF **LORAIN** } ss.

Personally appeared before me, a **Notary Public** in and for said County,
**Andrews and Hazel J. Andrews, husband and wife** who
acknowledged the signing of the foregoing instrument to be **their** voluntary act and deed for the uses and purposes therein mentioned.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my **official** seal this **14th** day of
**April** A. D. 19 **50**

F. W. West
*Notary Public*

THE STATE OF OHIO
COUNTY OF **LORAIN** } ss.

Personally appeared before me, a **Notary Public** in and for said County,
**The Wellington Savings & Loan Company, by** _____ , its
**Secretary** and by _____ , its _____ who is
being duly authorized in the premises _____ voluntary act and deed for the uses and purposes therein mentioned, **on behalf of the said The Wellington Savings & Loan Co.**

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my **official** seal this **14th** day of
**April** A. D. 19 **50**

G. W. West
*Notary Public*

Supplemental Agreement

FROM

H. N. ANDREWS & HAZEL J.
ANDREWS, husband and wife

TO

THE OHIO FUEL GAS CO.

Date _____ April 14 19 50
To Lease No. 147634
No. Acres 122
Township Penfield
County Lorain
Received _____
Recorded AUG 14 1950
_____ o'clock P. M.
_____ County, Ohio

UNOFFICIAL

Exhibit A

WARRANTY DEED—No. 062A

073655

VOL 1271 PAGE 102
FALLS LAW PRINT COMPANY,
CUYAHOGA FALLS, O.

# Know all Men by these Presents

**That,** Howard K. Andrews by attorney in fact, and Hazel L. Andrews, H & W

, the Grantor**s**

for the consideration of    Ten and 00/100
Dollars ($   10.00   ) received to   our   full satisfaction of

Kay A. Lombard, single

the Grantee , do

**Give, Grant, Bargain, Sell and Convey** unto the said Grantee , her
heirs and assigns, the following described premises, situated in the Township of
Penfield , County of Lorain and State of Ohio:
and known as being part of Original Lot No. 30,Tract 2 of said Township, bounded
and described as follows: Beginning at a point in the centerline of Jones Road
at its intersection with the centerline of Sooy Road; thence East along the
centerline of Jones Road a distance of 174.72 feet to the East line of premises
standing in the name of Robert Huttinger and Doris Huttinger as found in Deed
Vol. 1213, page 820 Lorain County Records; thence North along the East line of
Huttinger lands a distance of 1264.89 feet to an iron pin set in the North line of
Original Lot 30; thence East along the North line of Lot 30 to an iron pin at
the NorthWest corner of premises in the name of Richard Behnke and Carol Behnke;
thence South along the West line of Behnke lands, a distance of 1247.54 feet to
the centerline of Jones Road; thence West along the centerline of Jones Road to
the South East corner of a 2.51 acre parcel standing in the name of Robert G. Box
and Diane Box; (Deed Vol. 1181, page 695; thence North along the East line of
Box premises, a distance of 275.00 feet to an iron pin; thence West along the
North line of Box premises and those premises conveyed to Douglas F. Johnson
(Deed Vol. 1264, page 302), a distance of 723.35 feet to an iron pin at the
North West corner of Johnson premises aforesaid; thence South along the West line
of Johnson lands, a distance of 275 feet to the centerline of Jones Road; thence
West along the centerline of Jones Road, a distance of 650 feet to the place of
beginning and containing within said bounds about 63.53 acres be the same more
or less, but subject to all legal highways. PP#19-02-030-000-035

Excepting therefrom 2.05 acres, as was conveyed to Douglas F.
Johnson by deed dated June 18, 1980, and recorded in Deed Volume 1264
Page 302 of Lorain County Records.

UNOFF

TRANSFERRED
IN COMPLIANCE WITH SEC. 319.202
OHIO REV. CODE

NOV 6 1980

JULIAN A. PLIOR
LORAIN COUNTY AUDITOR

EXHIBIT
D

Exhibit A

be the same more or less, but subject to all legal highways.

**Œo Haue and to Hold** the above granted and bargained premises, with the appurtenances thereof, unto the said Grantee    her    heirs and assigns forever.

. . *And*    we    ; Howard K. Andrews, attorney in fact and Hazel L. Andrews the said Grantor s , do for    ourselves    and    our    heirs, executors and administrators, covenant with the said Grantee    her    heirs and assigns, that at and until the ensealing of these presents,    we are well seized of the above described premises, as a good and indefeasible estate in FEE SIMPLE, and have good right to bargain and sell the same in manner and form as above written, and that the same are free from all incumbrances whatsoever,    except taxes which are to be prorated to date of transfer on the records and paid henceforth by the grantee her heirs, and assigns, easements, restrictions, assessments, if any which are of record.

and that    we    will **Warrant and Defend** said premises, with the appurtenances thereunto belonging, to the said Grantee    her    heirs and assigns, against all lawful claims and demands whatsoever,    except as above

*And for valuable consideration*

release and forever quit-claim unto the said Grantee    do hereby remise, all    right and expectancy of    **Dower** in the above described premises.

**In Witness Whereof**    we    have hereunto set    our    hand s, the    31 day of    October    , in the year of our Lord one thousand nine hundred and    eighty

Signed and acknowledged in presence of

_(signature)_                                 _(signature)_ Howard K Andrews
_(signature)_ Harrison L Comstock          _(signature)_ Hazel L. Andrews P.O.A.
_____           by Hazel L. Andrews his attorney in fact
_____           _(signature)_ Hazel L. Andrews

**State of Ohio**        Before me, a notary public, in and for said County, personally
    Lorain    County, ss    appeared the above named Howard K. Andrews by Hazel L. Andrews his attorney in fact by power of attorney recorded in Vol. 9, page 285 Lorain County and Hazel L. Andrews
who acknowledged that    they    did sign the foregoing instrument, and that the same is    their    free act and deed.
    **In Testimony Whereof,** I have hereunto set my hand and official seal, at Wellington, Ohio    this    31st day of    October    A. D. 19  80

This instrument prepared by    _(signature)_ Harrison L. Comstock
Harrison L. Comstock, Atty.        Notary Public

HARRISON L COMSTOCK, Notary Public
State of Ohio
My commission does not expire

073655

HARRISON L COMSTOCK ATTY.
WELLINGTON, O. 44090

Howard K. Andrews by Attorney in fact, and Hazel L. Andrews, husband and wife
INDEXED TO
Kay A. Lombard, single

INDEXED

19___

COUNTY AUDITOR

FILM ROLL NO.
2037

Transferred
Nov 5  10 14 AM '80
DOROTHY L. ESSEX
LORAIN COUNTY
RECORDER
State of Ohio
VOL 1273 PAGE 132

Received for Record on the ___ day of ___ 19___ M. at ___ o'clock ___ M. and Recorded in Deed Book ___ Page ___

County of Lorain

_(signature)_
COUNTY RECORDER

Recorder's Fee $ ___    Acc. # 1151

Lawyers Title Insurance Corporation  P.M.

VOL 1273  **Exhibit A**

WARRANTY DEED—No. 062A

**073656**

FALLS LAW PRINT COMPANY.
CUYAHOGA FALLS. O.

# Know all Men by these Presents

**That,** Kay A. Lombard, single

, the Grantor ,

*for the consideration of* Ten and 00/100
*Dollars ($ 10.00* ) *received to* my *full satisfaction of*

Hazel L. Andrews, married

the Grantee , do

**Give, Grant, Bargain, Sell and Convey** *unto the said Grantee ,* her
*heirs and assigns, the following described premises, situated in the* Township *of*
Penfield *, County of* Lorain *and State of Ohio:*
and known as being part of Original Lot No. 30,Tract 2 of said Township, bounded
and described as follows:  Beginning at a point in the centerline of Jones Road
at its intersection with the centerline of Sooy Road; thence East along the
centerline of Jones Road a distance of 174.72 feet to the East line of premises
standing in the name of Robert Huttinger and Doris Huttinger as found in Deed
Vol. 1213, page 820 Lorain County Records; thence North along the East line of
Huttinger lands a distance of 1264.89 feet to an iron pin set in the North line of
Original Lot 30; thence East along the North line of Lot 30 to an iron pin at
the NorthWest corner of premises in the name of Richard Behnke and Carol Behnke;
thence South along the West line of Behnke lands, a distance of 1247.54 feet to
the centerline of Jones Road; thence West along the centerline of Jones Road to
the South East corner of a 2.51 acre parcel standing in the name of RobertG. Box
and Diane Box; (Deed Vol. 1181, page 695; thence North along the East line of
Box premises, a distnace of 275.00 feet to an iron pin; thence West along the
North line of Box premises and those premises conveyed to Douglas F. Johnson
(Deed Vol. 1264, page 302), a distance of 723.55 feet to an iron pin at the
North West corner of Johnson premises aforesaid; thence South along the West line
of Johnson lands, a distance of 275 feet to the centerline of Jones Road; thence
West along the centerline of Jones Road, a distance of 650 feet to the place of
beginning and containing within said bounds about 63.53 acres be the same more
or less, but subject to all legal highways. PP#19-02-030-000-035

Excepting therefrom 2.05 acres, as was conveyed to Douglas F.
Johnson by deed dated June 18, 1980, and recorded in Deed Volume 1264
Page 302 of Lorain County Records.

TRANSFERRED
IN COMPLIANCE WITH SEC. 319-202
OHIO REV. CODE

NOV 6 1980

**JULIAN A. PIJOR**
**LORAIN COUNTY AUDITOR**

EXHIBIT
**E**

*be the same more or less, but subject to all legal highways.*

Exhibit A

**To Have and to Hold** the above granted and bargained premises, with the appurtenances thereof, unto the said Grantee ,    her    heirs and assigns forever.

And   I     Kay A. Lombard   and   my      heirs, executors and the said Grantor , do for    myself    her     heirs and assigns, that administrators, covenant with the said Grantee .   her    heirs and assigns, that at and until the ensealing of these presents,   I am well seized of the above described premises, as a good and indefeasible estate in FEE SIMPLE, and have good right to bargain and sell the same in manner and form as above written, and that the same are **free from all incumbrances whatsoever**, except taxes which are to be prorated to date of transfer on the records and paid henceforth by the grantee, her heirs and assigns, easements, restrictions, assessments, if any, which are of record.

and that    I    will **Warrant and Defend** said premises, with the appurtenances thereunto belonging, to the said Grantee ,   her    heirs and assigns, against all lawful claims and demands whatsoever,    except as above

And for valuable consideration

     do hereby remise, release and forever quit-claim unto the said Grantee    heirs and assigns, all     right and expectancy of    **Dower**   in the above described premises.

**In Witness Whereof**    I have hereunto set   my    hand, the 30th day of   October    , in the year of our Lord one thousand nine hundred and eighty

Signed and acknowledged in presence of

Maritta R. Deyer

Jackie Lombard

Kay A. Lombard

**State of Ohio**    Before me, a notary public, in and for said County, personally    County, ss    appeared the above named    Kay A. Lombard

who acknowledged that   she    did sign the foregoing instrument; and that the same is   her    free act and deed. **In Testimony Whereof,** I have hereunto set my hand and official seal, at   London     this    30th day of   October     A. D. 19 80

This instrument prepared by    Jackie Lombard Harrison L. Comstock, Atty.    My commission expires   Notary Public 2/26/85

UNOFFICIAL

073656

MAIL

H. L. COMSTOCK, ATTY WELLINGTON, OHIO

Kay A. Lombard, single

INDEXED   TO   INDEXED

Hazel L. Andrews, married

19____

Ohio County Auditor 20 37

Received for Record in the County of Lorain 19____ day of ____ M. and Recorded Deed Book ____ Page ____

COUNTY AUDITOR

FILM ROLL NO.

County of Ohio LORAIN COUNTY RECORD RECEIVED FOR RECORD VOL 494 PAGE 134 Transfer
Nov. 5 10 14 AM '80 DOROTHY L. LASH, ESQ. LORAIN COUNTY RECORDER

COUNTY RECORDER

Recorder's Fee $ 5.00

Rec. #4151

Lawyers Title Insurance Corporation

VOL 1271 PAGE 135 Exhibit A

WARRANTY DEED—No. 062A

**130419**

FALLS LAW PRINT COMPANY.
CUYAHOGA FALLS, O.

VOL. 1321 PAGE 554

# Know all Men by these Presents

**That,** I, HAZEL L. ANDREWS, widow and not remarried

, the Grantor ,

*for the consideration of* Ten and 00/100
Dollars ($ 10.00 ) *received to* my *full satisfaction of*

JOHN ORMANDY AND ZELMA ORMANDY, husband and wife

the Grantee s, do

**Give, Grant, Bargain, Sell and Convey** unto the said Grantee s, their
*heirs and assigns, the following described premises, situated in the* Township of
Penfield , *County of* Lorain *and State of Ohio:*

and being part of Section 2 of Original Lot 30 of said
township, bounded and described as follows:
Beginning at a point in the centerline of Jones Road at the
Southwesterly corner of land conveyed to Richard Behnke and Carol
Behnke by deed dated August 22, 1979 and recorded in Deed Volume
1242, Page 691 of the Lorain County Record of Deeds; Thence in
the centerline of Jones Road, South 89°30'30" West, a distance
of 250.00 feet to the principal place of beginning of lands herein
described; Thence continuing in said centerline, South 89° 30' 30"
West, a distance of 780.21 feet to a point at the Southeasterly
corner of lands conveyed to Robert G. Box and Diane Box by deed
dated July 27, 1977 and recorded in Deed Volume 1181, Page 695 of
the Lorain County Record of Deeds; Thence in the Easterly line of
said Box's lands, North 0°29'30" West, passing through an iron pin
found 29.77 feet Northerly from said centerline a distance of
275.00 feet to an iron pin found at the Northeasterly corner thereof;
Thence in the Northerly line of said Box' lands, South 89° 32'24"
West, a distance of 169.69 feet to a point; Thence continuing
in said line, South 89°-52'00" West, a distance of 228.24 feet to an
iron pin found at the Southeasterly corner of land conveyed to
Douglas F. Johnson by deed recorded in Deed Volume 1314, Page 669
of the Lorain County Record of Deeds; Thence in the Easterly line of
said Johnson' lands, Due North, a distance of 125 feet to an iron
pin set; Thence Due West, parallel to and 400.00 feet Northerly
from the centerline of Jones Road, a distance of 400.40 feet to an
iron pin set in the Easterly line of lands conveyed to Feite
Hofman by deed recorded in Deed Volume 1312, Page 263 of the Lorain
County Record of Deeds; Thence in the Easterly line of said Hofman'
lands, Due North, a distance of 867.09 feet to an iron pin set in
the Northerly line of Original Lot 30; thence in said line, North
89°51'24" East, a distance of 1578.56 feet to an iron pin set;
Thence South 0°05'30" East, a distance of 1262.48 feet to a point
in the centerline of Jones Road passing through an iron pin set
30.00 feet Northerly therefrom and the principal place of beginning
of land herein described. Containing within said bounds 39.7251
Acres of land.

Surveyed by Laundon, Simon, Cahl & Assoc., Inc. in May, 1983.

LORAIN COUNTY MAP DEPT.
P. P. No. 19-02-030-000-041

**TRANSFERRED**
IN COMPLIANCE WITH SEC. 319-202
OHIO REV. CODE

**JUN 10 1983**

**JULIAN A. PIJOR**
LORAIN COUNTY AUDITOR

JUN 10 83 001490

*be the same more or less, but subject to all legal highways.*



EXHIBIT
**F**

Exhibit A

Exhibit A

**To Have and to Hold** the above granted and bargained premises, with the appurtenances thereof, unto the said Grantee s, their heirs and assigns forever.

And I , Hazel L. Andrews the said Grantor , do for myself and my heirs, executors and administrators, covenant with the said Grantee s . their heirs and assigns, that at and until the ensealing of these presents, I am well seized of the above described premises, as a good and indefeasible estate in FEE SIMPLE, and have good right to bargain and sell the same in manner and form as above written, and that the same are free from all incumbrances whatsoever, except taxes which are to be prorated to date of transfer on the records and paid henceforth by the grantees, their heirs and assigns, easements, restrictions, assessments, if any, which are of record.

and that I will **Warrant and Defend** said premises, with the appurtenances thereunto belonging, to the said Grantee s , their heirs and assigns, against all lawful claims and demands whatsoever, except as above

And for valuable consideration do hereby remise, release and forever quit-claim unto the said Grantee , heirs and assigns, all right and expectancy of **Dower** in the above described premises.

**In Witness Whereof** I have hereunto set my hand , the 31 day of May , in the year of our Lord one thousand nine hundred and eighty three

Signed and acknowledged in presence of

Harrison L. Comstock — Hazel L. Andrews
Marielle Storran — Hazel L.Andrews

**State of Ohio** Lorain County, ss } Before me, a notary public, in and for said County, personally appeared the above named Hazel L. Andrews who acknowledged that she did sign the foregoing instrument, and that the same is her free act and deed.

**In Testimony Whereof**, I have hereunto set my hand and official seal, at Wellington, Ohio this 31 day of May A. D. 19 83

Harrison L. Comstock
HARRISON L. COMSTOCK, Notary Public
State of Ohio
My commission does not expire

This instrument prepared by
Harrison L. Comstock, Atty.

pb

130419

**Warranty Deed** INDEXED

Hazel L. Andrews, widow and not remarried

TO

John Ormandy and Zelma Ormandy, H & W

FILM ROLL NO. 2361

**Transferred** 19
DOROTHY L. ESSEX LORAIN COUNTY RECORDER
JUN 10 3 31 PM '83
REC'D FOR RECORD LORAIN COUNTY
Deed Vol 1321 Page 554

COUNTY AUDITOR

**State of Ohio, County of** ss
**Received for Record on the** day of 19 at o'clock M. and Recorded 19 in **Deed Book** **Page**

**Recorder's Fee $** 10.00 pd
COUNTY RECORDER

Best Lorain County Title

LC 48494

Doc ID: 018631370006 Type: OFF
Kind: DEEDS
Recorded: 02/18/2015 at 01:57:24 PM
Fee Amt: $60.00 Page 1 of 6
Lorain County, Ohio
Judith M Nedwick County Recorder

File 2015-0534836

TRANSFERRED
IN COMPLIANCE WITH SEC. 319-202
OHIO REV. CODE

FEB 18 2015

J. CRAIG SNODGRASS, CPA, CGFM
LORAIN COUNTY AUDITOR

2015 FEB 18 P 1:49          000533

## WARRANTY DEED

      **KNOW ALL MEN BY THESE PRESENTS**, that JOHN ORMANDY and ZELMA ORMANDY, husband and wife, the Grantors, for valuable consideration paid, **Grant**, with general warranty covenants, to T&B FARMS, LLC, an Ohio limited liability company, the Grantee, whose tax mailing address will be 43200 Butternut Ridge Road, Oberlin, Ohio 44074, its successors and assigns, the following-described **Real Property**:

      See Legal Description attached hereto as Exhibit A.

      Excluding from such general warranty covenants: (a) restrictions, conditions, reservations, easements and oil and gas leases of record, (b) zoning ordinances and (c) taxes and assessments, both general and special, not yet due and payable;

      EXCEPTING AND RESERVING, HOWEVER, to the Grantors, and their heirs, personal representatives, successors and assigns, all right, title and interest in and to that certain Oil and Gas Lease by and between Eugene A. Klinect and Florence L. Klinect, husband and wife ("Lessor"), and The Ohio Fuel Gas Company, an Ohio corporation ("Lessee"), dated October 26, 1966, filed for record December 9, 1966 and recorded in Lease Volume 83, Pages 837 and 838 of the Lorain County, Ohio Records.

      Executed this _18th_ day of February, 2015.

                            _____
                            John Ormandy

                            _____
                            Zelma Ormandy

EXHIBIT
**G**

Exhibit A

STATE OF OHIO )
) ss:
COUNTY OF Lorain )

    BE IT REMEMBERED, that on the 18th day of February, 2015, before me, the subscriber, a notary public in and for said county and state, personally came JOHN ORMANDY and ZELMA ORMANDY, who acknowledged that they signed the foregoing instrument and that the same is their free and voluntary act and deed.

    IN TESTIMONY WHEREOF, I have hereunto subscribed my name and affixed my notarial seal on the day and year last aforesaid.



                           Notary Public

ANTHONY C. YACOBOZZI
NOTARY PUBLIC
FOR THE
STATE OF OHIO
My Commission Expires
March 22, 2016

This instrument prepared by:

BROWN, AMODIO & CHANDLER,
A Legal Professional Association
109 West Liberty Street
Medina, Ohio  44256
Phone:  (330) 725-8816

Box :               FC15–1313
**French Creek**
Title Agency, Ltd.
6155 Park Square Drive, Suite 8E
Lorain, Ohio 44053

-2-

Exhibit A

EXHIBIT A
LEGAL DESCRIPTION

Situated in the Township of Penfield, County of Lorain and State of Ohio, also known as being part of Section/Tract Nos. 2 and 3, Lot Nos. 30 thru 32 and being part of lands conveyed to John Ormandy Jr. and Zelma Ormandy as recorded in Volume 1321, Page 554 and by deed dated November 04, 1977 as recorded in Volume 1191, Page 392 of Lorain County Records further bounded and described as follows:

* 31,

Commencing at a 5/8-inch iron pin in a monument box found and used at the intersection of the centerline Sooy Road and the centerline of Jones Road;

Thence along the centerline of Jones Road, bearing North 87°34'56" East, a distance of 1154.07 feet to an angle point therein;

Thence continuing along the centerline of Jones Road, bearing North 87°04'50" East, a distance of 529.57 to a point thereon, also being the Southeast corner of lands conveyed to John L. and Lora L. Hostal by deed dated July 15, 2003 as recorded in Instrument No. 2003-0930727 of Lorain County Records and the TRUE PLACE OF BEGINNING of the parcel herein described;

Thence along the Eastern line of said lands of Hostal, bearing North 03°56'36" West, passing through an iron pin set at 30.00 feet, a total distance of 354.89 feet to an iron pin set;

Thence along the Northern line of said lands of Hostal and parallel to a portion of the centerline of Jones Road, bearing South 87°04'50" West, a distance of 699.42 feet to an iron pin set at the Northwest corner of said lands of Hostal, also being a point on the Eastern line of lands conveyed to Douglas F. Johnson by deed dated February 16, 1983 as recorded in Volume 1314, Page 669 of Lorain County Records;

Thence along the Eastern line of said lands of Johnson (1983), bearing North 02°27'21" West, a distance of 46.68 feet to a ¾-inch pipe found and used at the Northeast corner of said lands of Johnson;

Thence along the Northern line of said lands of Johnson (1983) and parallel to a portion of the centerline of Jones Road, bearing South 87°24'56" West, a distance of 400.40 feet to a ¾-inch pipe found and used at the Northwest corner of said lands of Johnson (1983), also being a point on the Eastern line of lands conveyed to Douglas F. & Patricia L. Johnson by deed dated December 07, 1999 as recorded in Instrument No. 1999-0657483 of Lorain County Records;

Thence along the Eastern line of said lands of Johnson (1999), bearing North 02°27'01" West, a distance of 867.09 feet to a ¾-inch pipe found and used at the Northeast corner of said lands of Johnson (1999), also being a point on the Northern line of aforesaid Section/Tract No. 2, Lot No. 30, also being the Southern line of aforesaid Section/Tract No. 3, Lot No. 31;

Thence along the Northern line of said lands of Johnson (1999) and along the Southern line of aforesaid Section/Tract No. 3, Lot No. 31, bearing South 87°26'18" West, passing through an iron pin set at 234.13 feet, a total distance of 284.13 feet to a point on the Northern line of said lands of Johnson (1999) and the Southern line of aforesaid Section/Tract No. 3, Lot No. 31, also being the Southeast corner of lands conveyed to Jay M. Murray, Jr. by deed dated September 30, 2003 as recorded in Instrument No. 2003-0953913 of Lorain County Records, also being a point in the centerline of the East Branch Black River;

Thence along centerline of the East Branch Black River, along a non-tangent curve to the left having a radius of 259.93 feet, the long chord of which bears North 08°34'06" West for a distance of 156.13 feet for an arc length of 158.58 feet to a point in the centerline of the East Branch Black River;

Legal description reviewed by [signature]
on 2-18-15 per ORC. Section 5713.

Exhibit A

Thence continuing along centerline of the East Branch Black River and along a compound curve to the left with a radius of 100.00 feet, a tangent length of 29.56 feet, the chord of which bears North 42°30'50" West for a distance of 56.69 feet, along said arc for a distance of 57.48 feet to a point in the centerline of the East Branch Black River;

Thence continuing along centerline of the East Branch Black River and along a reverse curve to the right with a radius of 92.58 feet, a tangent length of 92.10 feet, the chord of which bears North 14°07'48" West for a distance of 130.59 feet, along said arc for a distance of 144.94 feet to a point in the centerline of the East Branch Black River;

Thence continuing along centerline of the East Branch Black River, bearing North 30°43'17" East, a distance of 50.04 feet to a point in the centerline of the East Branch Black River;

Thence continuing along centerline of the East Branch Black River and along a tangent curve to the right with a radius of 112.65 feet, a tangent length of 139.82 feet, the chord of which bears North 31°51'48" East for a distance of 175.44 feet, along said arc for a distance of 201.10 feet to a point in the centerline of the East Branch Black River;

Thence continuing along centerline of the East Branch Black River and along a reverse curve to the left with a radius of 96.00 feet, a tangent length of 94.32 feet, the chord of which bears North 88°30'35" East for a distance of 134.56 feet, along said arc for a distance of 119.11 feet to a point in the centerline of the East Branch Black River;

Thence continuing along centerline of the East Branch Black River and along a compound curve to the left with a radius of 258.51 feet, a tangent length of 57.69 feet, the chord of which bears North 31°26'02" East for a distance of 112.61 feet, along said arc for a distance of 113.52 feet to a point in the centerline of the East Branch Black River;

Thence continuing along centerline of the East Branch Black River, bearing North 18°51'14" East, a distance of 144.70 feet to a point in the centerline of the East Branch Black River;

Thence continuing along centerline of the East Branch Black River and along a tangent curve to the left with a radius of 858.63 feet, a tangent length of 214.99 feet, the chord of which bears North 04°47'47" East for a distance of 417.11 feet, along said arc for a distance of 421.32 feet to a point in the centerline of the East Branch Black River;

Thence continuing along centerline of the East Branch Black River and along a compound curve to the left with a radius of 50.00 feet, a tangent length of 14.70 feet, the chord of which bears North 25°38'20" West for a distance of 28.20 feet, along said arc for a distance of 28.59 feet to a point in the centerline of the East Branch Black River;

Thence continuing along centerline of the East Branch Black River and along a reverse curve to the right with a radius of 55.00 feet, a tangent length of 79.86 feet, the chord of which bears North 13°25'45" East for a distance of 90.60 feet, along said arc for a distance of 106.45 feet to a point in the centerline of the East Branch Black River;

Thence continuing along centerline of the East Branch Black River and along a compound curve to the right with a radius of 847.55 feet, a tangent length of 30.99 feet, the chord of which bears North 70°58'09" East for a distance of 61.94 feet, along said arc for a distance of 61.95 feet to a point in the centerline of the East Branch Black River;

Legal description reviewed by ____
on 2-18-15  per ORC Section 5713.

Exhibit A

Thence continuing along centerline of the East Branch Black River and along a compound curve to the right with a radius of 50.00 feet, a tangent length of 8.57 feet, the chord of which bears North 82°47'11" East for a distance of 16.89 feet, along said arc for a distance of 16.97 feet to a point in the centerline of the East Branch Black River;

Thence continuing along centerline of the East Branch Black River and along a compound curve to the right with a radius of 2544.38 feet, a tangent length of 79.17 feet, the chord of which bears South 85°42'30" East for a distance of 158.26 feet, along said arc for a distance of 158.29 feet to a point in the centerline of the East Branch Black River;

Thence continuing along centerline of the East Branch Black River and along a compound curve to the right with a radius of 150.00 feet, a tangent length of 18.67 feet, the chord of which bears South 76°49'49" East for a distance of 37.06 feet, along said arc for a distance of 37.15 feet to a point in the centerline of the East Branch Black River;

Thence continuing along centerline of the East Branch Black River and along a compound curve to the right with a radius of 1259.31 feet, a tangent length of 69.92 feet, the chord of which bears South 66°33'23" East for a distance of 139.62 feet, along said arc for a distance of 139.69 feet to a point in the centerline of the East Branch Black River;

Thence continuing along centerline of the East Branch Black River and along a reverse curve to the left with a radius of 20.00 feet, a tangent length of 12.12 feet, the chord of which bears North 85°23'55" East for a distance of 20.73 feet, along said arc for a distance of 21.80 feet to a point;

Thence continuing along centerline of the East Branch Black River and along a compound curve to the left with a radius of 200.70 feet, a tangent length of 44.27 feet, the chord of which bears North 41°44'17" East for a distance of 86.45 feet, along said arc for a distance of 87.14 feet to a point in the centerline of the East Branch Black River;

Thence continuing along centerline of the East Branch Black River and along a compound curve to the left with a radius of 15.00 feet, a tangent length of 6.33 feet, the chord of which bears North 06°24'46" East for a distance of 11.67 feet, along said arc for a distance of 11.98 feet to a point in the centerline of the East Branch Black River;

Thence continuing along centerline of the East Branch Black River and along a reverse curve to the right with a radius of 130.00 feet, a tangent length of 39.63 feet, the chord of which bears North 00°28'40" East for a distance of 75.81 feet, along said arc for a distance of 76.93 feet to a point in the centerline of the East Branch Black River, also being the Southwest corner of lands conveyed to Russell J. and Vicki-Lynn Dudzinski by deed dated August 20, 2003 as recorded in Instrument No. 2003-0942774 of Lorain County Records;

Thence along the Southern line of said lands of Dudzinski, bearing North 87°37'32" East, passing through an iron pin set at 50.00 feet, a total distance of 1884.33 feet to an iron pin set at the Southeast corner of said lands of Dudzinski;

Thence along the Eastern line of said lands of Dudzinski, also being parallel to the Eastern line of Section/Tract No. 3, Lot No. 33, bearing North 02°27'18" West, a distance of 1765.51 feet to an iron pin set on the Eastern line of said lands of Dudzinski, also being a point on the Northern line of aforesaid Section/Tract No. 3, Lot No. 32 and the Southern Line of said Section/Tract No. 3, Lot No. 33;

Thence along the Northern line of aforesaid Section/Tract No. 3, Lot No. 32 and the Southern Line of said Section/Tract No. 3, Lot No. 33, bearing North 87°24'30" East, a distance of 768.41 feet to an iron pin set on the Northern line of said Section/Tract No. 3, Lot No. 32, also being a point on the Western line of lands

Legal description reviewed by ___

on 2-18-15 per ORC Section 5713

Exhibit A

conveyed to Leona Park by deed dated April 05, 1989 as recorded in Official Record Volume 165, Page 359 of Lorain County Records;

Thence along the Western line of said lands of Park, also being parallel to the Eastern line of aforesaid Section/Tract No. 3, Lot No. 33, bearing South 02°27'18" East, a distance of 329.95 feet to an iron pin set at the Southwest corner of said lands of Park;

Thence along the Southern line of said lands of Park, bearing North 87°24'30" East, a distance of 330.27 feet to a 1-inch iron pipe found and used on the Eastern line of aforesaid Section/Tract No. 3, Lot No. 32, also being a point on the Western line of lands conveyed to Mike & Heidi Eady by deed dated June 04, 1999 as recorded in Instrument No. 1999-0619903 of Lorain County Records;

Thence along the Eastern line of aforesaid Section/Tract No. 3, Lot No. 32, bearing South 02°51'02" East, a distance of 2656.15 feet to the Southeast corner of aforesaid Section/Tract No. 3, Lot No. 31, also being the Northeast corner of lands conveyed to Agnes M. Smith by deed dated January 09, 2002 as recorded in Instrument No. 2012-0398000 of Lorain County Records, as witnessed by a 1-inch iron pipe found 0.14 feet South;

Thence along the Southern line of said Section/Tract No. 3, Lot No. 31, bearing South 87°44'53" West, a distance of 1809.23 feet to a 1-inch iron pipe found and used at an angle point in the Southern line of said Section/Tract No. 3, Lot No. 31, also being the Northeast corner of lands conveyed to Donald A. Piwinski II by deed dated May 26, 2006 as recorded in Instrument No. 2006-0145031 of Lorain County Records;

Thence continuing along the Southern line of said Section/Tract No. 3, Lot No. 31, also along the Northern line of said lands of Piwinski, bearing South 87°26'19" West, a distance of 249.99 feet to an iron pin set on the Southern line of said Section/Tract No. 3, Lot No. 31 at the Northwest corner of said lands of Piwinski;

Thence along the Western line of said lands of Piwinski, bearing South 02°33'44" East, a distance of 1262.25 feet to the Southwest corner of said lands of Piwinski, also being a point on the centerline of Jones Road;

Thence along the centerline of Jones Road, bearing South 87°04'50" West, a distance of 471.44 feet to a point on the centerline of Jones Road, also being the Southeast corner of aforesaid lands of Hostal and the TRUE PLACE OF BEGINNING, containing 179.8726 acres of land, being 35.2392 acres of land in aforesaid Lot No. 32, 108.1343 acres of land in aforesaid Lot No. 31 and 36.4991 acres of land in aforesaid Lot No. 30, more or less but subject to all legal highways and all covenants and agreements of record.

Bearings are based on an assumed meridian and are used herein to indicate angles only.

The centerline of the East Branch Black River is described as observed on April 27, 2012.

Parcel boundary lines along the East Branch Black River and overall parcel acreage are subject to change due to the natural movement of the waterway through time.

The statement iron pin set refers to a 5/8" X 30" iron rebar set vertically with surveyor's I.D. cap marked "Rolling~Hocevar".

This legal description was prepared based on a survey under the supervision of Douglas S. Jewel, P.S. No. S-8007 by Rolling & Hocevar, Inc. in June 2012. PP# 19-03-031-000-004; 19-03-032-000-002; 19-02-030-000-056:

FRENCH CREEK TITLE

Legal description reviewed by ___ on 2-18-15 per ORC. Section 5713.

Exhibit A

Doc ID: 018881630005 Type: OFF
Kind: DEEDS
Recorded: 07/24/2015 at 03:14:24 PM
Fee Amt: $52.00 Page 1 of 5
Lorain County, Ohio
Judith M Nedwick County Recorder
File **2015-0553257**

TRANSFERRED
IN COMPLIANCE WITH SEC. 319.202
OHIO REV. CODE
JUL 24 2015
J. CRAIG SNODGRASS, CPA, CGFM
LORAIN COUNTY AUDITOR

2015 JUL 24 P 3: 11          003205

# Quit-Claim Deed

Know all Men by these Presents, that T & B Farms, LLC, an Ohio limited liability company, the Grantor, which claims title to real property described below by virtue of an instrument filed as Instrument No. 2015-0534836, for the consideration of Ten Dollars ($10.00) received to its full satisfaction of Ronald K. Novak and Melissa A. Novak, husband and wife, the Grantees, has given, granted, remised, released and forever quit-claimed, and does by these presents absolutely give, grant, remise, release and forever quit-claim unto the said Grantees, their heirs and assigns forever, for their joint lives, remainder to the survivor of them, the following described real property:

**See Exhibit "A" attached hereto**

To have and to hold premises aforesaid, with the appurtenances thereunto belonging, to the said Grantees, their heirs and assigns, so that neither the said Grantor, nor its successors or assigns, nor any other persons claiming title through or under it, shall or will hereafter claim or demand any right or title to the premises, or any part thereof, but they and every one of them shall by these presents be excluded and forever barred.

Executed at ___Tempe___, ___Arizona___ this ___22nd___ day of July, 2015.

T & B Farms, LLC
By: National Safe Harbor Exchanges, a California
corporation, its Sole Member

By: _____
Laura C. Reagle, Assistant Vice President

State of ___Arizona___ )
                                      )ss.
County of ___Maricopa___ )

On this ___22nd___ day of July, 2015, before me, a Notary Public, in and for said County and State, personally came Laura C. Reagle, who acknowledged herself to be the Assistant Vice President of National Safe Harbor Exchanges, a California corporation, and she further acknowledged that said corporation is also the sole member of T & B Farms, LLC, an Ohio limited liability company, the Grantor in the foregoing deed, and that she is duly authorized to execute the foregoing instrument and the same is the free act and deed of said limited liability company.

MACHELLE CHERRY
Notary Public - Arizona
Maricopa County
My Comm. Expires Jan 10, 2016

_Machelle Cherry_
Notary Public

This Instrument Prepared by:
Trigillo &Stephenson, P.L.L.
5750 Cooper Foster Park Road, Suite 102
Lorain, Ohio 44053-4132
(440) 988-9500

**FrenchCreek**  BOX
Title Agency, Ltd.
6155 Park Square Drive, Suite 8E
Lorain, Ohio 44053
FC15-1313A

EXHIBIT
**H**

Exhibit A

EXHIBIT "A"

LEGAL DESCRIPTION

Situated in the Township of Penfield, County of Lorain and State of Ohio, also known as being part of Section/Tract Nos. 2 and 3, Lot Nos. 30 thru 32 and being part of lands conveyed to John Ormandy Jr. and Zelma Ormandy as recorded in Volume 1321, Page 554 and by deed dated November 04, 1977 as recorded in Volume 1191, Page 392 of Lorain County Records further bounded and described as follows:

Commencing at a 5/8-inch iron pin in a monument box found and used at the intersection of the centerline Sooy Road and the centerline of Jones Road;

Thence along the centerline of Jones Road, bearing North 87°34'56" East, a distance of 1154.07 feet to an angle point therein;

Thence continuing along the centerline of Jones Road, bearing North 87°04'50" East, a distance of 529.57 to a point thereon, also being the Southeast corner of lands conveyed to John L. and Lora C. Hostal by deed dated July 15, 2003 as recorded in Instrument No. 2003-0930727 of Lorain County Records and the TRUE PLACE OF BEGINNING of the parcel herein described;

Thence along the Eastern line of said lands of Hostal, bearing North 03°56'36" West, passing through an iron pin set at 30.00 feet, a total distance of 354.89 feet to an iron pin set;

Thence along the Northern line of said lands of Hostal and parallel to a portion of the centerline of Jones Road, bearing South 87°04'50" West, a distance of 999.41 feet to an iron pin set at the Northwest corner of said lands of Hostal, also being a point on the Eastern line of lands conveyed to Douglas F. Johnson by deed dated February 16, 1983 as recorded in Volume 1314, Page 669 of Lorain County Records;

Thence along the Eastern line of said lands of Johnson (1983), bearing North 02°27'21" West, a distance of 46.68 feet to a ¾-inch pipe found and used at the Northeast corner of said lands of Johnson;

Thence along the Northern line of said lands of Johnson (1983) and parallel to a portion of the centerline of Jones Road, bearing South 87°34'56" West, a distance of 400.40 feet to a ¾-inch pipe found and used at the Northwest corner of said lands of Johnson (1983), also being a point on the Eastern line of lands conveyed to Douglas G. & Patricia L. Johnson by deed dated December 07, 1999 as recorded in Instrument No. 1999-0657483 of Lorain County Records;

Thence along the Eastern line of said lands of Johnson (1999), bearing North 02°27'01" West, a distance of 867.09 feet to a ¾-inch pipe found and used at the Northeast corner of said lands of Johnson (1999), also being a point on the Northern line of aforesaid Section/Tract No. 2, Lot No. 30, also being the Southern line of aforesaid Section/Tract No. 3, Lot No. 31;

Thence along the Northern line of said lands of Johnson (1999) and along the Southern line of aforesaid Section/Tract No. 3, Lot No. 31, bearing South 87°26'18" West, passing through an iron pin set at 234.13 feet, a total distance of 284.13 feet to a point on the Northern line of said lands of Johnson (1999) and the Southern line of aforesaid Section/Tract No. 3, Lot No. 31, also being the Southeast corner of lands conveyed to Jay M. Murray, Jr. by deed dated September 30, 2003 as recorded in Instrument No. 2003-0953913 of Lorain County Records, also being a point in the centerline of the East Branch Black River;

Thence along centerline of the East Branch Black River, along a non-tangent curve to the left having a radius of 259.93 feet, the long chord of which bears North 08°34'06" West for a distance of 156.13 feet for an arc length of 158.58 feet to a point in the centerline of the East Branch Black River;

7-24-15

RQM (dM)

Exhibit A

Thence continuing along centerline of the East Branch Black River and along a compound curve to the left with a radius of 100.00 feet, a tangent length of 29.56 feet, the chord of which bears North 42°30'50" West for a distance of 56.69 feet, along said arc for a distance of 57.48 feet to a point in the centerline of the East Branch Black River;

Thence continuing along centerline of the East Branch Black River and along a reverse curve to the right with a radius of 92.58 feet, a tangent length of 92.10 feet, the chord of which bears North 14°07'48" West for a distance of 130.59 feet, along said arc for a distance of 144.94 feet to a point in the centerline of the East Branch Black River;

Thence continuing along centerline of the East Branch Black River, bearing North 30°43'17" East, a distance of 50.04 feet to a point in the centerline of the East Branch Black River;

Thence continuing along centerline of the East Branch Black River and along a tangent curve to the right with a radius of 112.65 feet, a tangent length of 139.82 feet, the chord of which bears North 81°51'48" East for a distance of 175.44 feet, along said arc for a distance of 201.10 feet to a point in the centerline of the East Branch Black River;

Thence continuing along centerline of the East Branch Black River and along a reverse curve to the left with a radius of 96.00 feet, a tangent length of 94.32 feet, the chord of which bears North 88°30'35" East for a distance of 134.56 feet, along said arc for a distance of 149.11 feet to a point in the centerline of the East Branch Black River;

Thence continuing along centerline of the East Branch Black River and along a compound curve to the left with a radius of 258.51 feet, a tangent length of 57.69 feet, the chord of which bears North 31°26'02" East for a distance of 112.61 feet, along said arc for a distance of 113.52 feet to a point in the centerline of the East Branch Black River;

Thence continuing along centerline of the East Branch Black River, bearing North 18°51'14" East, a distance of 144.70 feet to a point in the centerline of the East Branch Black River;

Thence continuing along centerline of the East Branch Black River and along a tangent curve to the left with a radius of 858.63 feet, a tangent length of 214.99 feet, the chord of which bears North 04°47'47" East for a distance of 417.11 feet, along said arc for a distance of 421.32 feet to a point in the centerline of the East Branch Black River;

Thence continuing along centerline of the East Branch Black River and along a compound curve to the left with a radius of 50.00 feet, a tangent length of 14.70 feet, the chord of which bears North 25°38'20" West for a distance of 28.20 feet, along said arc for a distance of 28.59 feet to a point in the centerline of the East Branch Black River;

Thence continuing along centerline of the East Branch Black River and along a reverse curve to the right with a radius of 55.00 feet, a tangent length of 79.86 feet, the chord of which bears North 13°25'45" East for a distance of 90.60 feet, along said arc for a distance of 106.45 feet to a point in the centerline of the East Branch Black River;

Thence continuing along centerline of the East Branch Black River and along a compound curve to the right with a radius of 847.55 feet, a tangent length of 30.99 feet, the chord of which bears North 70°58'09" East for a distance of 61.94 feet, along said arc for a distance of 61.95 feet to a point in the centerline of the East Branch Black River;

7-24-15

Exhibit A

Thence continuing along centerline of the East Branch Black River and along a compound curve to the right with a radius of 50.00 feet, a tangent length of 8.57 feet, the chord of which bears North 82°47'11" East for a distance of 16.89 feet, along said arc for a distance of 16.97 feet to a point in the centerline of the East Branch Black River;

Thence continuing along centerline of the East Branch Black River and along a compound curve to the right with a radius of 2544.38 feet, a tangent length of 79.17 feet, the chord of which bears South 85°42'30" East for a distance of 158.26 feet, along said arc for a distance of 158.29 feet to a point in the centerline of the East Branch Black River;

Thence continuing along centerline of the East Branch Black River and along a compound curve to the right with a radius of 150.00 feet, a tangent length of 18.67 feet, the chord of which bears South 76°49'49" East for a distance of 37.06 feet, along said arc for a distance of 37.15 feet to a point in the centerline of the East Branch Black River;

Thence continuing along centerline of the East Branch Black River and along a compound curve to the right with a radius of 1259.31 feet, a tangent length of 69.92 feet, the chord of which bears South 66°33'23" East for a distance of 139.62 feet, along said arc for a distance of 139.69 feet to a point in the centerline of the East Branch Black River;

Thence continuing along centerline of the East Branch Black River and along a reverse curve to the left with a radius of 20.00 feet, a tangent length of 12.12 feet, the chord of which bears North 85°23'55" East for a distance of 20.73 feet, along said arc for a distance of 21.80 feet to a point;

Thence continuing along centerline of the East Branch Black River and along a compound curve to the left with a radius of 200.70 feet, a tangent length of 44.27 feet, the chord of which bears North 41°44'17" East for a distance of 86.45 feet, along said arc for a distance of 87.14 feet to a point in the centerline of the East Branch Black River;

Thence continuing along centerline of the East Branch Black River and along a compound curve to the left with a radius of 15.00 feet, a tangent length of 6.28 feet, the chord of which bears North 06°24'46" East for a distance of 11.67 feet, along said arc for a distance of 11.98 feet to a point in the centerline of the East Branch Black River;

Thence continuing along centerline of the East Branch Black River and along a reverse curve to the right with a radius of 130.00 feet, a tangent length of 39.63 feet, the chord of which bears North 00°28'40" East for a distance of 75.84 feet, along said arc for a distance of 76.93 feet to a point in the centerline of the East Branch Black River, also being the Southwest corner of lands conveyed to Russell J. and Vicki-Lynn Dudzinski by deed dated August 20, 2003 as recorded in Instrument No. 2003-0942774 of Lorain County Records;

Thence along the Southern line of said lands of Dudzinski, bearing North 87°37'32" East, passing through an iron pin set at 50.00 feet, a total distance of 1884.33 feet to an iron pin set at the Southeast corner of said lands of Dudzinski;

Thence along the Eastern line of said lands of Dudzinski, also being parallel to the Eastern line of Section/Tract No. 3, Lot No. 33, bearing North 02°27'18" West, a distance of 1765.51 feet to an iron pin set on the Eastern line of said lands of Dudzinski, also being a point on the Northern line of aforesaid Section/Tract No. 3, Lot No. 32 and the Southern Line of said Section/Tract No. 3, Lot No. 33;

Thence along the Northern line of aforesaid Section/Tract No. 3, Lot No. 32 and the Southern Line of said Section/Tract No. 3, Lot No. 33, bearing North 87°24'30" East, a distance of 768.41 feet to an iron pin set on the Northern line of said Section/Tract No. 3, Lot No. 32, also being a point on the Western line of lands

7-24-15

conveyed to Leona Park by deed dated April 05, 1989 as recorded in Official Record Volume 165, Page 359 of Lorain County Records;

Thence along the Western line of said lands of Park, also being parallel to the Eastern line of aforesaid Section/Tract No. 3, Lot No. 33, bearing South 02°27'18" East, a distance of 329.95 feet to an iron pin set at the Southwest corner of said lands of Park;

Thence along the Southern line of said lands of Park, bearing North 87°24'30" East, a distance of 330.27 feet to 1-inch iron pipe found and used on the Eastern line of aforesaid Section/Tract No. 3, Lot No. 32, also being a point on the Western line of lands conveyed to Mike & Heidi Eady by deed dated June 04, 1999 as recorded in Instrument No. 1999-0619903 of Lorain County Records;

Thence along the Eastern line of aforesaid Section/Tract No. 3, Lot No. 32, bearing South 02°51'02" East, a distance of 2656.15 feet to the Southeast corner of aforesaid Section/Tract No. 3, Lot No. 31, also being the Northeast corner of lands conveyed to Agnes M. Smith by deed dated January 09, 2012 as recorded in Instrument No. 2012-0398000 of Lorain County Records, as witnessed by a 1-inch iron pipe found 0.14 feet South;

Thence along the Southern line of said Section/Tract No. 3, Lot No. 31, bearing South 87°44'53" West, a distance of 1809.23 feet to a 1-inch iron pipe found and used at an angle point in the Southern line of said Section/Tract No. 3, Lot No. 31, also being the Northeast corner of lands conveyed to Donald A. Piwinski II by deed dated May 26, 2006 as recorded in Instrument No. 2006-0145031 of Lorain County Records;

Thence continuing along the Southern line of said Section/Tract No. 3, Lot No. 31, also along the Northern line of said lands of Piwinski, bearing South 87°26'18" West, a distance of 249.99 feet to an iron pin set on the Southern line of said Section/Tract No. 3, Lot No. 31 at the Northwest corner of said lands of Piwinski;

Thence along the Western line of said lands of Piwinski, bearing South 02°33'44" East, a distance of 1262.25 feet to the Southwest corner of said lands of Piwinski, also being a point on the centerline of Jones Road;

Thence along the centerline of Jones Road, bearing South 87°04'50" West, a distance of 471.44 feet to a point on the centerline of Jones Road, also being the Southeast corner of aforesaid lands of Hostal and the TRUE PLACE OF BEGINNING, containing 179.8726 acres of land, being 35.2392 acres of land in aforesaid Lot No. 32, 108.1343 acres of land in aforesaid Lot No. 31 and 36.4991 acres of land in aforesaid Lot No. 30, more or less but subject to all legal highways and all covenants and agreements of record.

Bearings are based on an assumed meridian and are used herein to indicate angles only.

The centerline of the East Branch Black River is described as observed on April 27, 2012.

Parcel boundary lines along the East Branch Black River and overall parcel acreage are subject to change due to the natural movement of the waterway through time.

The statement iron pin set refers to a 5/8" X 30" iron rebar set vertically with surveyor's I.D. cap marked "Rolling~Hocevar".

This legal description was prepared based on a survey under the supervision of Douglas S. Jewel, P.S. No. S-8007 by Rolling & Hocevar, Inc. in June 2012.

Permanent Parcel Nos.: 19-02-030-000-056, 19-03-031-000-004 and 19-03-032-000-002

EXAMCO TITLE SERVICES
6155 PARK SQUARE DRIVE
UNIT 3 SUITE 3
LORAIN, OH 44053

7-24-15

Exhibit A